IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Cesarina L. Johnson and   :
Jermaine Johnson, h/w,    :
    Appellants    : No. 1048 C.D. 2021
            :
    v.     : Argued: November 6, 2023
            :
Pocono Township Zoning   :
Hearing Board and     :
Pocono Township     :

BEFORE: HONORABLE PATRICIA A. McCULLOUGH, Judge
     HONORABLE MICHAEL H. WOJCIK, Judge
     HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY JUDGE McCULLOUGH      FILED: February 7, 2024

   Appellants Cesarina L. Johnson and Jermaine Johnson, husband and wife (Landowners or Appellants), appeal from the August 11, 2021 order of the Court of Common Pleas of Monroe County, Pennsylvania (trial court), which denied their land use appeal from the November 4, 2020 decision of the Pocono Township (Township) Zoning Hearing Board (ZHB). The ZHB denied Landowners' appeal from the November 26, 2019 decision of the Township Zoning Officer (Zoning Officer), who denied their Application for Certificate of Nonconformity (Application). In their Application, Landowners requested to continue utilizing their property located at 3262 Birch Hill Drive, Tannersville, Pennsylvania (Property), to provide short-term rentals. After careful review, we affirm, in part, and reverse, in part.

## I.  FACTS AND PROCEDURAL HISTORY

   The material facts and procedural history underlying this appeal are not disputed. We summarize them, in pertinent part, as follows.

The Township adopted its current zoning ordinance on November 17, 2003 (Zoning Ordinance).[1]  Landowners purchased the Property in 2016 to use as a second residence and to provide short-term rentals.  Landowners' primary residence is in Brooklyn, New York.  The Property is improved with a single-family home and is located in the R-1 Low Density Residential Zoning District (R-1 District).[2]  The Zoning Ordinance does not expressly include "short-term rentals" as a permitted use in any zoning district.  The Zoning Ordinance does, however, permit "transient dwelling accommodations" in the Recreation and Commercial Zoning Districts.  *See* Zoning Ordinance, §§ 470-19(B)(1)(a), 470-20(B)(1)(ii).  Although the term "transient

---

[1] Pocono Township, Pa., Zoning Ordinance, Ordinance No. 110, November 17, 2003, *as amended*, Pocono Township, Pa., Code (Township Code) §§ 470-1 – 470-146, *available at* https://ecode360.com/30105418#30105418 (last visited February 6, 2024).

[2] Section 470-17 of the Zoning Ordinance governs R-1 Districts.  Section 470-17(B)(1) lists the following uses that are permitted "by right":

> (a) Single-family detached dwellings.
> (b) Essential services buildings and structures. ([*See*] § 470-57.)
> (c) Customary accessory uses and buildings incidental to the above permitted uses.  ([*See*] § 470-53.)
> (d) Accessory buildings and uses customarily incidental to conditional uses approved under Subsection B(2) below.
> (e) Home occupations ([*See*] § 470-63.)
> (f) Antennas and communication equipment buildings.  ([*See*] § 470-44.)
> (g) Churches and related uses.  ([*See*] § 470-50.)
> (h) Clubhouses for use by homeowners' associations.  ([*See*] § 470-73.)
> (i) Open space.
> (j) Forestry. ([*See*] § 470-58.)
> (k) Keeping of equine animals. ([*See*] § 470-65.)

Zoning Ordinance, § 470-17(B)(1)(a)-(k).  The Zoning Ordinance states that the purpose of the R-1 District is to "provide suburban residential areas in the Township with limited public utility services where low-density single-family residential development may occur."  *Id.* § 470-17(A).

dwelling accommodations" is not defined in the Zoning Ordinance, it includes non-exhaustive examples of such accommodations:

### § 470-19 RD Recreation District

. . . .

B.    Uses and structures

    (1)    Permitted uses by right:

        (a)    Transient dwelling accommodations including hotels, motels, resorts and lodges (Excludes bed-and-breakfast establishments and boardinghouses, [*see*] conditional uses below.)

. . . .

### § 470-20 C Commercial District

. . . .

B.    Uses and structures

    (1)    Permitted uses by right:

        . . . .

        (ii)    Transient dwelling accommodations including hotels, motels, and lodges.

Zoning Ordinance, §§ 470-19, 470-20. Boardinghouses and bed-and-breakfast establishments are conditional uses in the Recreation District, *see* Zoning Ordinance, § 470-19(B)(3)(b), (c), and are permitted uses "by right" in the Commercial District. *Id.* § 470-20(B)(1)(f), (g).

In *Marchenko v. Zoning Hearing Board of Pocono Township*, 147 A.3d 947 (Pa. Cmwlth. 2016), Tatiana Marchenko owned a single-family dwelling in the Township's R-1 District that she utilized more than half the time as a short-term rental. *Id.* at 948-49. In 2014, Marchenko received from the Zoning Officer a notice of violation advising her that such use was not permitted in the R-1 District. *Id.* at 948. Marchenko appealed to the ZHB, which affirmed based on its conclusion that

3

Marchenko's short-term rental best qualified as a "lodge" use, which was one of the examples of "transient dwelling accommodations" specified in the Zoning Ordinance. *Id.* at 949. The trial court affirmed, concluding that, pursuant to the Pennsylvania Supreme Court's decision in *Albert v. Zoning Hearing Board of North Abington Township*, 854 A.2d 401 (Pa. 2004),[3] Marchenko's short-term rentals were not consistent with a "single-family dwelling" use and fairly were considered a "lodge use" by the ZHB. *Id.* at 950.

On appeal to this Court, we concluded that Marchenko's short-term rentals were consistent with a broad interpretation of the single-family dwelling use and therefore were permitted in the R-1 District. *Id.* We further concluded that the ZHB erred in construing Marchenko's rentals as a "lodge" because the use of a primary residence to provide short-term rentals was different than the commonly understood definition of a lodge as a "house or hotel in the county or mountains for people who are doing some outdoor activity." *Id.* We accordingly reversed the ZHB's decision. *Id.* at 951. Then-Senior Judge Pellegrini dissented, concluding that, under *Albert*, "someone who offers a property for rent on a transient basis is not occupying the home as a single-family dwelling, but instead is operating a business of renting out the property." *Id.* at 951 (Pellegrini, S.J., dissenting). The Township did not appeal.

---

[3] In *Albert*, the Supreme Court addressed the question of whether a halfway house for recovering alcoholics and drug addicts was the functional equivalent of a single-family detached dwelling, which was a permitted use in the residential zoning district where the house was located. *Albert*, 854 A.2d at 402. The *Albert* Court concluded that the plain and ordinary meaning of "family," as that term typically is used in zoning ordinances, means "single housekeeping unit." *Id.* at 407 n.5. The *Albert* Court ultimately concluded that a halfway house was not the functional equivalent of a single-family detached dwelling because of the "transience of its residents." *Id.* at 407; *see also id.* at 409 ("[I]t is undeniable that inherent in the concept of 'family' and, in turn, in the concept of a 'single-family dwelling,' is a certain expectation of relative stability and permanence in the composition of the familial unit[.]").

4

In response to our decision in *Marchenko*, on January 17, 2017, the Township enacted a stand-alone ordinance, No. 2017-03, titled "The Short-Term Rental Ordinance of Pocono Township" (2017 Ordinance). The 2017 Ordinance provided "for a system of inspections and for issuance and renewal of licenses and to establish penalties for violations." (Reproduced Record (R.R.) at 177a.) The 2017 Ordinance applied "to all existing and future properties that are used as [s]hort-[t]erm [r]entals in [the] Township which are located in the R-1 and [R-2 Medium Density Residential (R-2)[4]] District[s] . . . and shall constitute the minimum requirements and standards for the operation of any [short-term rental]." (2017 Ordinance, Section I; R.R. at 178a.) The 2017 Ordinance was not enacted as an amendment to the Zoning Ordinance pursuant to Section 609 of the Pennsylvania Municipalities Planning Code,[5] 53 P.S. § 10609.

In April 2017, Landowners applied for and were granted a short-term rental license (License) in accordance with the 2017 Ordinance. Prior to the issuance of the License, the Zoning Officer inspected the Property and required improvements to the home's electrical system, stairs, garage door, and a window. Landowners hired contractors to perform the necessary repairs, which cost Landowners $2,200. Landowners understood that the License was valid for only a one-year period. After obtaining the License, Landowners utilized an outside company to manage and book their rentals and perform background checks on potential renters. They used the Property themselves on one weekend and one to two weekdays per month. They

---

[4] *See* Zoning Ordinance, § 470-18. The purpose of the R-2 District is "to provide suburban residential areas in the Township with limited public utility services where medium density residential development may occur." *Id.* § 470-18(A). Boardinghouses and bed-and-breakfast establishments are permitted as conditional uses in the R-2 District. *Id.* § 470-18(B)(3)(b), (d).

[5] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202.

5

marketed the Property for rentals the remainder of the time. Landowners rented the Property approximately 8 to 12 days per month and rented the entire house to 1 family each time. When the License expired on October 31, 2018, Landowners were granted a renewal with an expiration date of November 19, 2019.

In the meantime, the Pennsylvania Supreme Court issued its decision in *Slice of Life, LLC v. Hamilton Township Zoning Hearing Board*, 207 A.3d 886 (Pa. 2019), in which that Court, relying on its prior decision in *Albert*, concluded that "the purely transient use of a house is not a permitted use in a residential zoning district limiting use to single-family homes by a 'single housekeeping unit.'"[6] *Id.* at 888. *Slice of Life* involved a house in Hamilton Township, Monroe County, Pennsylvania, that was owned by a single-member limited liability company (LLC) (Slice of Life) and was not occupied at any time as the personal residence of the LLC member. *Id.* at 892. The house was in a single-family zoning district that permitted, among other uses, "single[-]family detached dwellings and accessory uses and essential services." *Id.* at 891-92. Slice of Life purchased the house as an investment property to be used exclusively for short-term rentals. *Id.* at 892. In 2014, the Hamilton Township zoning officer issued a notice of violation to Slice of Life on the ground that transient lodging was not a permitted use in the zoning district. *Id.* The zoning hearing board denied Slice of Life's appeal, and the trial court affirmed. This Court reversed, concluding

---

[6] Similarly here, the Zoning Ordinance defines "family" as:

> One or more persons, related by blood, adoption or marriage, living and cooking together in a dwelling unit as *a single housekeeping unit* or a number of persons living and cooking together in a dwelling unit as a single housekeeping unit though not related by blood, adoption or marriage, provided that they live together in a manner similar to a traditional nuclear family.

Zoning Ordinance, § 470-8 (emphasis added).

6

that a renter of the house constituted a "family" for purposes of the zoning ordinance, which brought the house within the permitted use of a single-family detached dwelling. *Id.* at 895.

The Supreme Court reversed, concluding that this Court's broad reading of the zoning ordinance to permit all not-expressly-excluded uses within the narrower meaning of a "single family" use was improper and inconsistent with its decision in *Albert* and *In re: Appeal of Miller*, 515 A.2d 904 (Pa. 1986).[7]  *Id.* at 902.  In so concluding, the Supreme Court overruled our decisions in *Marchenko* and *Shvekh v. Zoning Hearing Board of Stroud Township*, 154 A.3d 408 (Pa. Cmwlth. 2017), to the extent that those decisions broadly interpreted the zoning ordinances at issue as permitting short-term rentals as part of a single-family dwelling use.[8]  The Supreme

---

[7] *Miller* involved a homeowner who provided lodging, meals, and care to disabled persons in her home, which was located in a residential zoning district that permitted single-family dwellings and precluded convalescent homes, nursing homes, and boarding houses.  *Miller*, 515 A.2d at 905. The applicable zoning ordinance defined "family," in relevant part, as persons living together as a "single housekeeping unit."  *Id.*  The *Miller* Court thus had to determine whether the individuals residing in the home together qualified as a "single housekeeping unit."  *Id.*  In doing so, the Court adopted a "functional analysis" focusing on whether a household "functioned" as a family.  *Id.* at 907-08.  The Court ultimately concluded that, because the individuals occupied shared areas of the house and lived, cooked, ate meals, celebrated holidays, and attended social and religious functions together, they "functioned" as a family.  The use therefore was permitted under the zoning ordinance. *Id.* at 909.

[8] Specifically, the *Slice of Life* Court concluded as follows in overruling our decisions in *Marchenko* and *Shvekh*:

> The [Commonwealth Court's] requirement in *Marchenko* . . . that any use not specifically prohibited will be deemed permitted is not only contrary to our above-discussed precedent, but also to our prior decision in *Silver v. Zoning* [*Board*] *of Adjustment*, . . . 112 A.2d 84 ([Pa.] 1955), wherein we held that uses not expressly permitted in a zoning ordinance "are excluded by implication." *Id.* at 87. . . .

**(Footnote continued on next page…)**

Court also reaffirmed the rule from *Albert*, namely, that "a purely transient use of a property is incompatible with the definition of a 'family' defined as a 'single housekeeping unit.'" *Id.* at 903. Because Slice of Life used the house exclusively for short-term rentals that were a "purely transient" use, that use did not come within the meaning of "single-family dwelling" in a residential district and therefore was not permitted. *Id.*

In July 2019, in response to the Supreme Court's decision in *Slice of Life*, the Township repealed the 2017 Ordinance, eliminating short-term rental licensing in the R-1 District. In September 2019, the Township adopted Chapter 302 of the Township Code, titled "Transient Dwelling Use of Single-Family Dwellings" (2019 Ordinance).[9] The 2019 Ordinance applies only to the Commercial and Recreation Districts and expressly does not apply to "a hotel/motel/inn, bed-and-breakfast, boarding house, or group home, when the property owner or a representative[ ] is present on-site at the property on a twenty-four-hour-per-day basis." (2019 Ordinance, § 302-2(A), (B).) The 2019 Ordinance is not part of the Zoning Ordinance, but is to be, whenever possible, "construed and interpreted as being consistent, and not in

> This excluded-unless-expressly-included standard, combined with *Miller*'s "functional analysis," is the only workable standard. A single-family home (or other structure) can be used in as many ways as the imagination allows – for example, as a restaurant, a bakery, a bed and breakfast, a school, a store, a veterinary hospital, a halfway house or a pigeon sanctuary. The rule announced by the Commonwealth Court is impossible for drafters of zoning ordinances to execute. Therefore, we overrule these decisions on that basis.

*Slice of Life*, 207 A.2d at 902 (some internal citations omitted). The Supreme Court expressly declined to opine as to whether the outcomes in *Marchenko* and *Shvekh* were incorrect. *Id.* at 902 n.14.

[9] Ordinance No. 2019-07, September 16, 2019, *as amended*, Township Code §§ 302-1 – 302-15, *available at* https://ecode360.com/34825907#34825907 (last visited February 6, 2024).

conflict," with the Zoning Ordinance. *Id.* § 302-3. "Transient Dwelling Use of a Single-Family Dwelling," or "TDU," is defined in the 2019 Ordinance as "[a]ny dwelling unit owned or managed by a person which is rented or leased for a period of less th[a]n 30 days." *Id.* § 302-4. The 2019 Ordinance goes on to impose licensing requirements for dwelling unit owners who want to operate a TDU as well as a process for appeals of licensing decisions to the Township Board of Commissioners. *See id.* §§ 302-6 – 302-15.

In November 2019, after their License was allowed to expire, Landowners submitted the Application, seeking to continue what they alleged was their legal, nonconforming use of utilizing the Property for short-term rentals. The Zoning Officer denied the Application, and Landowners appealed to the ZHB. In their appeal to the ZHB, Landowners argued that they were entitled to continue utilizing the Property for short-terms rental as a legal, nonconforming use and based on the doctrines of vested rights and variance by estoppel. Landowners further argued that the Zoning Ordinance was invalid because it totally excluded from all zoning districts the short-term rental of single-family dwellings. After hearing and briefing, the ZHB denied Landowners' appeal by written decision issued on November 4, 2020. Landowners appealed to the trial court, which affirmed.

Landowners now appeal to this Court.

## II.   ISSUES

Landowners raise two issues on appeal: (1) whether the Zoning Ordinance is impermissibly exclusionary because it does not permit the short-term rental of a single-family dwelling in any zoning district in the Township; and (2) whether

9

Landowners' short-term rentals constitute a lawful, nonconforming use of the Property that they must be permitted to continue.[10]

## III. DISCUSSION[11]

### A. The Ordinance as Exclusionary

Landowners first argue that the Zoning Ordinance is invalid because it fails to accommodate the valid use of single-family dwellings as short-term rentals, which use they contend is not included within the "transient dwelling accommodations" use. The Township and ZHB argue that short-term rentals are permitted as "transient dwelling accommodations" in both the Commercial and Recreation Districts, and, therefore, the Zoning Ordinance is valid.

"When a proposed use can be considered within another zoning classification or, where the zoning ordinance is broad enough to encompass the proposed use, there is no de jure exclusion." *Kratzer v. Board of Supervisors of Fermanagh Township*, 611 A.2d 809, 812 (Pa. Cmwlth. 1992) (citation omitted). "In examining whether a proposed use is covered by an ordinance, 'we are mindful that

---

[10] Landowners have abandoned on appeal their vested rights and variance by estoppel theories of relief.

[11] Our review of a zoning hearing board decision, where the trial court does not receive additional evidence,

> is limited to determining whether the [zoning hearing] board abused its discretion or committed an error of law. An abuse of discretion occurs where the [zoning hearing] board's findings are not supported by substantial evidence. Substantial evidence is such relevant evidence that a reasonable person would accept as adequate to support the conclusion reached.

*Friends of Lackawanna v. Dunmore Borough Zoning Hearing Board*, 186 A.3d 525, 531 n.6 (Pa. Cmwlth. 2018) (citations omitted). "In deciding a question of law, our scope of review is plenary and standard of review is de novo." *Cook v. City of Philadelphia Civil Service Commission*, 246 A.3d 347, 353 (Pa. Cmwlth. 2021) (emphasis added).

ordinances are to be construed expansively, affording the landowner the broadest possible use and enjoyment of his or her land.'" *Hatboro Borough v. Buckingham Retail Properties, LLC*, 245 A.3d 728, 737 (Pa. Cmwlth. 2020) (citation omitted). *See also* Section 603.1 of the MPC, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10603.1 (in interpreting zoning ordinances to determine the extent of a use restriction, "the language shall be interpreted, where doubt exists as to the intended meaning of the language written and enacted by the governing body, in favor of the property owner and against any implied extension of the restriction"). Nevertheless, "a party challenging the lawfulness of an ordinance bears a heavy burden [because] an ordinance is presumptively valid and constitutional." *Bloomsburg Industrial Ventures, LLC v. Town of Bloomsburg*, 242 A.3d 969, 978 (Pa. Cmwlth. 2020) (citation omitted). "[Although] the Statutory Construction Act [of 1972][12] does not specifically apply to our construction of zoning ordinances, we have nonetheless applied [statutory construction] principles in our interpretive decisions." *Slice of Life*, 207 A.3d at 899 (citation omitted). "Thus, undefined words and phrases that appear in a zoning ordinance are to be given their 'plain and ordinary meaning.'" *Id.* "When interpreting the meaning of a zoning ordinance, . . . [our] primary objective [is] determining the intent of the legislative body that enacted the ordinance." *Bloomsburg*, 242 A.3d at 979 (citation omitted).[13]

---

[12] Statutory Construction Act of 1972, 1 Pa.C.S. §§ 1501-1991.

[13] Section 470-4(A), (B) of the Zoning Ordinance governs its interpretation. It provides:

> A. The provisions of this chapter shall be the minimum requirements for the promotion of the health, safety, morals and general welfare. Except where specifically provided to the contrary, it is not intended to interfere with or abrogate or annul other rules, regulations or ordinances, provided that where this chapter imposes a greater restriction upon the use of buildings or premises or upon the height

**(Footnote continued on next page…)**

"The issue of whether a proposed use falls within a given category of permitted use in a zoning ordinance is a question of law, subject to this Court's review." *Caln Nether Co., L.P. v. Board of Supervisors of Thornbury Township*, 840 A.2d 484, 491 (Pa. Cmwlth. 2004). Courts examine whether an ordinance is exclusionary using a two-step analysis:

> [W]e first consider whether the challenging party has overcome the presumed constitutionality of an ordinance by showing it excludes [the proposed use] as a use. If we determine the challenger has done so, we then consider whether the municipality has salvaged the ordinance by presenting evidence to show that the exclusionary regulation bears a substantial relationship to the public health, safety, morality, or welfare.

*Township of Exeter v. Zoning Hearing Board of Exeter Township*, 962 A.2d 653, 661 (Pa. 2009).

The ZHB concluded that "both 'partial' and 'exclusive' short-term rentals are encompassed by the umbrella term, 'transient dwelling accommodations.'" (ZHB Decision, November 4, 2020, at 26.) The ZHB therefore concluded that Landowners' proposed use of the Property was a transient dwelling accommodation that is not

---

or bulk of a building or requires larger open spaces, the provisions of this chapter shall prevail.

B. Interpretation standards. Any list of permitted or prohibited uses shall not be deemed to be an exhaustive list but has been included for the purposes of clarity and emphasis and to illustrate, by example, uses which are desirable (permitted, special exception, conditional uses). Whenever the [ZHB] makes an interpretation of this chapter, then, unless other standards are in this chapter, the decision shall be made so that the results will not be contrary to the spirit and purpose of this chapter or injurious to the surrounding neighborhood.

Zoning Ordinance, § 470-4(A), (B).

12

permitted in the R-1 District, but is permitted in the Commercial and Recreation Districts. (*Id.*, Conclusions of Law (COL) ¶¶ 3, 4, 8.) We agree.

Where a zoning ordinance does not define a term, "it must be given its usual and ordinary meaning; if a court needs to define a term in a zoning ordinance, it may consult the definitions found in statutes, regulations, or dictionaries for guidance." *Nether Providence Township v. R.L. Fatscher Associates, Inc.*, 674 A.2d 749, 750-51 (Pa. Cmwlth. 1996). In reviewing the plain language of the text of an ordinance, *Kohl v. New Sewickley Township Zoning Hearing Board*, 108 A.3d 961, 968 (Pa. Cmwlth. 2015), we are "guided to construe words and phrases in a sensible manner, utilize the rules of grammar and apply their common and approved usage, and give undefined terms their plain, ordinary meaning." *Adams Outdoor Advertising, LP v. Zoning Hearing Board of Smithfield Township*, 909 A.2d 469, 483 (Pa. Cmwlth. 2006).

Here, although the term "transient dwelling accommodations" is not expressly defined in the Zoning Ordinance, its constituent parts each have plain and commonly accepted meanings. The Zoning Ordinance does not define "transient." Merriam-Webster defines "transient" as "passing especially quickly into and out of existence," or "passing through or by a place with only a brief stay or sojourn." Merriam-Webster Online Dictionary, *available at* https://www.merriam-webster.com/dictionary/transient (last visited February 6, 2024). That definition is consistent with the acknowledged meaning of "transient" utilized in *Slice of Life*, particularly as it applies to uses in single-family dwellings. *Slice of Life*, 207 A.3d at 893. "Dwelling" is defined in the Zoning Ordinance as "[a]ny building, vehicle or portion thereof designed or used exclusively as the residence or sleeping place of one or more persons . . . ." Zoning Ordinance, § 470-8. "Accommodations" is not defined in the Zoning Ordinance. Merriam Webster, however, defines "accommodation," in

13

relevant part, as "lodging, food, and services or traveling space and related services." Merriam Webster Online Dictionary, *available at* https://www.merriam-webster.com/dictionary/accommodation (last visited February 6, 2024). Used together in their commonly understood sense, then, the three component words of "transient dwelling accommodations" clearly denote a brief or "passing-through" residence or sleeping place for one or more persons that also may involve food and travel services. That meaning is consistent with the non-exhaustive examples of such accommodations that are given in the Zoning Ordinance, including hotels, motels, resorts, and lodges. *See* Zoning Ordinance, §§ 470-19(B)(1)(a), 470-20(B)(1)(ii). Excluded from "transient dwelling accommodations" are boardinghouses[14] and bed-and-breakfast establishments, both of which provide additional food services to customers and are subject to additional regulations in the Zoning Ordinance. *See id.* §§ 470-19(B)(1)(a); 470-20(B)(1)(f), (g), (ii); 470-46; 470-47. We agree with the ZHB's interpretation of its own Zoning Ordinance that short-term rentals of single-family dwellings are encompassed within the meaning of "transient dwelling accommodations," which is the meaning that affords the property owners in the Recreation and Commercial Zoning Districts the broadest uses of their properties.

  *Slice of Life* does not require a contrary interpretation. As Landowners acknowledge, *Slice of Life* contemplates that the short-term rental of a single-family

---

[14] The definition of "boardinghouse" in the Zoning Ordinance also makes reference to the definition of "rooming house or lodging house," which is defined as "a building in which an owner of a dwelling rents at least one room for residential purposes, but does not furnish meals." Zoning Ordinance, § 470-8. Thus, the Zoning Ordinance appears to include a "rooming house or lodging house" under the broader definition of "boardinghouse." Although we need not determine herein whether short-term rentals of a single-family dwelling would qualify as a "rooming or boardinghouse," we note that, if considered to be this type of boardinghouse, a short-term rental of a single-family dwelling would be permitted as a conditional use in the Recreation District and "by right" in the Commercial District. *See* Zoning Ordinance, §§ 470-19(B)(3)(b); 470-20(B)(1)(g).

dwelling is a legitimate use, but not within the strict definition of a "single-family dwelling," and not in a residential district. The Court in *Slice of Life* focused on the incompatibility of short-term rental use with the purposes of a residential zoning district. Indeed, the Court expressly was tasked with determining "whether the exclusive use of the [subject property] as a short-term rental unit is permitted by the Ordinance in Zoning District A *as a [s]ingle[-][f]amily [r]esidential use*." *Slice of Life*, 207 A.3d at 898 (emphasis added). It connected the need for permanence and stability to the type of zoning district involved, indicating that upholding the zoning hearing board was "entirely consistent with the long-recognized goals of creating a residential zoning district." *Slice of Life*, 207 A.3d at 899; *see also Albert*, 864 A.2d at 409 (explaining that single-family zoning districts "create residential neighborhoods in which the residents may develop a sense of community and a shared commitment to the common good of that community"). The Court further reasoned:

> Non-family uses, including fraternity houses and boarding houses, have been found to be antithetical to the "residential character," as "[m]ore people occupy a given space; more cars . . . continuously pass by; more cars are parked; [and] noise travels with crowds." . . . A quiet place where yards are wide, people few, and motor vehicles restricted are legitimate guidelines in a land-use project addressed to family needs. This goal is a permissible one . . . . The police power is not confined to elimination of filth, stench, and unhealthy places. It is ample to lay out zones where family values, youth values, and the blessings of quiet seclusion and clean air make the area a sanctuary for people.

*Slice of Life*, 207 A.3d at 889 (emphasis added) (quoting *Village of Belle Terre v. Boraas*, 416 U.S. 1, 9 (1974) (citations omitted)).

The rationale precluding short-term rentals in a residential zoning district based on homeowners' rights to community and quiet enjoyment of their property is

15

not implicated in this context where transient dwelling accommodations are permitted in Commercial and Recreation Districts, both of which include a host of other non-residential permitted uses. Thus, the need here for retaining the essential character of a single-family residential district is lacking.

Landowners labor in their brief to persuade the Court that we should read "transient dwelling accommodations" in the narrowest possible terms to exclude short-term rentals of single-family dwellings in all zoning districts in the Township. They contend that the testimony from the hearing before the ZHB establishes that, in the Zoning Officer's opinion, short-term rentals of single-family dwellings are not permitted anywhere in the Township and are entirely inconsistent uses. (Landowners' Br. at 11-15.) We disagree. First, and consistent with *Slice of Life*, a short-term rental use is not encompassed within the definition of "single-family dwelling." That is, for a single-family dwelling to be used as a short-term rental, the Zoning Ordinance must explicitly permit it. Otherwise, it is excluded. Second, and again under *Slice of Life*, short-term rentals of single-family dwellings, at least those that are "purely transient," may be permitted *only* outside of residential districts.

In sum, there is nothing in the record before us, in *Slice of Life*, or in the Zoning Ordinance suggesting that the Township could not permit the partial or exclusive short-term rental of single-family dwellings in the Recreation and Commercial Districts. And this, in fact, is precisely what the Township has done here. The 2019 Ordinance applies to and regulates temporary dwelling units that are *authorized by the Zoning Ordinance* in the Commercial and Recreation Districts. It is quite clear to this Court that the Township intended to, and did, permit short-term rentals of single-family dwellings in those zoning districts and, for that reason, developed and enacted a comprehensive licensing scheme to regulate them. We

therefore reject Landowners' attempts to invalidate the Zoning Ordinance on the ground that it is impermissibly exclusionary.

## B.    Short-Term Rentals as a Legal, Nonconforming Use

Landowners argue secondly that their utilization of the Property for short-term rentals is a legal, nonconforming use that they must be permitted to continue. They emphasize that this use was legal in 2017 when they received the License from the Zoning Officer pursuant to the 2017 Ordinance, and the License was renewed and still in effect when the Township rescinded the 2017 Ordinance and enacted the 2019 Ordinance.  The ZHB concluded that Landowners' use of the Property for short-term rentals was not legal when it began and thus cannot lawfully continue.  In these somewhat peculiar circumstances, we must agree with Landowners.

A lawful nonconforming use is a use that predates the enactment of a prohibitory zoning restriction.  *DoMiJo, LLC v. McLain*, 41 A.3d 967, 972 (Pa. Cmwlth. 2012).  The ability to maintain a nonconforming use is "only available for uses that were lawful when they came into existence and which existed when the ordinance took effect." *Hafner v. Zoning Hearing Board of Allen Township*, 974 A.2d 1204, 1210-11 (Pa. Cmwlth. 2009). "Preexisting illegal uses cannot become nonconforming uses." *Id.* at 1211.  The right to continue a legal nonconforming use is entitled to the constitutional protection of due process.  *Smalley v. Zoning Hearing Board of Middletown Township*, 834 A.2d 535, 539 (Pa. 2003). The fundamental basis for the protection of uses and structures that were lawful when instituted is the "inherent and indefeasible" right of the Commonwealth's citizens to possess and protect property guaranteed by article I, section 1 of the Pennsylvania Constitution, Pa. Const. art. I, § 1. *Pennsylvania Northwest Distributors, Inc. v. Zoning Hearing Board of Moon Township*, 584 A.2d 1372, 1375 (Pa. 1991).  Thus, "[a] lawful nonconforming use

establishes in the property owner a vested property right which cannot be abrogated or destroyed, unless it is a nuisance, it is abandoned, or it is extinguished by eminent domain." *Id.*

The burden is on a property owner to establish the existence of a prior nonconforming use. *TKO Realty, LLC v. Zoning Hearing Board of the City of Scranton*, 78 A.3d 732, 735 (Pa. Cmwlth. 2013) (citations and quotations omitted). To establish a prior nonconforming use, the property owner must provide "objective evidence that the subject land was devoted to such use at the time the zoning ordinance was enacted." *Smalley*, 834 A.2d at 538-39. Satisfying this burden requires "conclusive proof by way of objective evidence of the precise extent, nature, time of creation and continuation of the alleged nonconforming use." *Jones v. North Huntingdon Township Zoning Hearing Board*, 467 A.2d 1206, 1207 (Pa. Cmwlth. 1983) (citation omitted).[15]

The Township enacted its Zoning Ordinance in 2003, and as evidenced by its subsequent litigation of *Marchenko*, the ZHB interpreted the Zoning Ordinance to preclude short-term rentals of single-family dwellings in R-1 Districts. However, after this Court issued its un-appealed decision in *Marchenko* in late 2016, the controlling

---

[15] The MPC defines "nonconforming use" as follows:

> [A] use, whether of land or of structure, which does not comply with the applicable use provisions in a zoning ordinance or amendment heretofore or hereafter enacted, where such use was lawfully in existence prior to the enactment of such ordinance or amendment, or prior to the application of such ordinance or amendment to its location by reason of annexation.

Section 107 of the MPC, 53 P.S. § 10107. Section 470-32(A) of the Zoning Ordinance further defines "non[]conforming use" as "any use, whether of a building or lot or both, legally existing on the effective date of this chapter, or any amendments hereinafter enacted, which does not conform to the use regulations of the district in which it is located."

18

interpretation of the Zoning Ordinance permitted short-term rentals in R-1 Districts. The Township accordingly enacted the 2017 Ordinance to regulate and license short-term rentals in R-1 Districts. Landowners applied for and received their License in 2017, and thereafter began utilizing the Property for short-term rentals. That use therefore was lawful and conforming when it began in 2017.

Thereafter, the Supreme Court issued its decision in *Slice of Life*, which reversed this Court's determination that short-term rental use was included within the meaning of "single-family dwelling" in the R-1 District. The Township then rescinded the 2017 Ordinance, did not renew Landowners' License, and enacted the 2019 Ordinance to license short-term rentals only in the Commercial and Recreational Districts. Thus, and contrary to the Township's and ZHB's arguments, Landowners' nonconformity was not created by the enactment of the Zoning Ordinance in 2003. And, although the 2017 and 2019 Ordinances were enacted as health and safety measures and not technical amendments to the Zoning Ordinance, our precedents require only that a subsequent "zoning restriction" cause the nonconformity. Both the 2017 and 2019 Ordinances expressly regulated particular land uses and restricted them to particular zoning districts. They were, therefore, in spirit if not in letter, zoning restrictions that first legitimized Landowners' short-term rental use and then created Landowners' nonconformity. Landowners therefore have established a legal, nonconforming use that they must, in these circumstances, be permitted to continue.[16]

---

[16] We emphasize the limited scope of our holding. We conclude only that Landowners and any other property owners who (1) obtained licenses (2) to operate short-term rentals (3) in their single-family dwellings (4) in the R-1 District (5) pursuant to the 2017 Ordinance, may continue that lawful, nonconforming use.

# IV.    CONCLUSION

The Zoning Ordinance is not impermissibly exclusionary, and we affirm the trial court to the extent that it concluded similarly.  However, the ZHB erred in denying Landowners' Application, and we reverse the trial court to the extent that it concluded to the contrary.  We accordingly remand this matter to the trial court for further remand to the ZHB with instructions to grant Landowners' Application.


_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Cesarina L. Johnson and      :
Jermaine Johnson, h/w,       :
          Appellants     :   No.  1048 C.D. 2021
                           :
         v.             :
                           :
Pocono Township Zoning     :
Hearing Board and          :
Pocono Township           :

## ***ORDER***

AND NOW, this 7th day of February, 2024, the August 11, 2021 order of the Court of Common Pleas of Monroe County (trial court) hereby is AFFIRMED, IN PART, and REVERSED, IN PART, as set forth in the foregoing Opinion. This matter is REMANDED to the trial court for further remand to the Pocono Township Zoning Hearing Board with instructions to grant Appellants' Application for Certificate of Nonconformity.

Jurisdiction relinquished.

_____
PATRICIA A. McCULLOUGH, Judge